1  SEYFARTH SHAW LLP
   Peter E. Romo, Jr. (SBN 38925)
2  560 Mission Street, Suite 3100
   San Francisco, California 94105
3  Telephone: (415) 397-2823
   Facsimile: (415) 397-8549
4
   Attorney for Defendant
5  National Life Insurance Company

6

7
                              **E-filing**
8
                                                           *EDL*
9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11  LAURA RUSSO                    )  Case No.
                                   )
12         Plaintiff,              )  **NOTICE OF REMOVAL BY**
                                   )  **DEFENDANT NATIONAL LIFE**
13  v.                             )  **INSURANCE COMPANY PURSUANT**
                                   )  **TO 28 U.S.C. § 1446**
14  NATIONAL LIFE INSURANCE COMPANY, )
    and DOES 1 to 20,              )
15                                 )
           Defendants             )
16  _____ )

17  TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

18  DISTRICT OF CALIFORNIA:

19       PLEASE TAKE NOTICE that Defendant National Life Insurance Company ("National")

20  hereby serves notice of its removal of the above-entitled action to this Court and makes the

21  following showing in support of such removal:

22                 **PLEADING AND PROCEEDINGS TO DATE**

23       1.     On or about October 24, 2007, Plaintiff Laura Russo ("Plaintiff") commenced an

24  action in the Superior Court of the State of California, County of Alameda, entitled *Laura Russo*

25  *v. National Life Insurance Company, and Does 1 to 20, Case No. RG07352949*, by filing a

26  summons and complaint, a copy of which is attached hereto as Exhibit A.

27

28
                                        1
    NOTICE OF REMOVAL BY DEFENDANT NATIONAL LIFE INSURANCE COMPANY

2.    On November 12, 2007, National was served with the summons and complaint through its registered agent for service of process, CT Corporation System.

## DIVERSITY JURISDICTION

3.    Plaintiff alleges that she is, and at all times relevant was, a citizen of the State of California and resident of Alameda County.  National is, and at all times relevant was, a corporation duly organized and existing under the laws of the State of Vermont, with its principal place of business located in Montpelier, Vermont, and is therefore a citizen of Vermont.  28 U.S.C. § 1332(c).  Accordingly, complete diversity of citizenship exists between the parties. 28 U.S.C. § 1332(a)(1).

4.    DOE defendants are not proper in an action in federal court.  *See* 28 U.S.C. § 1441(a).  Accordingly, defendants identified as Does 1 to 20 can be disregarded for diversity purposes.

5.    Diversity jurisdiction exists when the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  The amount in controversy for jurisdictional purposes is determined by the amount of damages or the value of the property that is the subject of the action.  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977).  Plaintiff has claimed entitlement to, *inter alia*, $80,000 in compensation for the unpaid Death Benefit owed under the life insurance policy at issue and issued to Scott Gibbs, compensation for the emotional distress proximately caused by National, an award of exemplary and punitive damages, and attorneys' fees and costs.

6.    Based on Plaintiff's claims, this case deals with an amount in controversy that exceeds the jurisdictional minimum.

7.    Accordingly, this United States District Court has proper jurisdiction based upon the amount in controversy and diversity of citizenship.

2

1

**VENUE**

2      8.    This is a suit of a wholly civil nature brought in a California court. The action is

3  pending in Alameda County and, under 28 U.S.C. § 84(a) and §1441(a), the United States

4  District Court for the Northern District of California is the proper forum for removal.

5      9.    This case is being removed within thirty (30) days after November 12, 2007,

6  when National first received notice of this action by service of summons and complaint on its

7  registered agent for service of process. This Notice is thus timely filed within the time period

8  provided in 28 U.S.C. § 1446(b).

9      10.    True and correct copies of all pleadings served upon National including the

10  Complaint are attached hereto as Exhibit A.

11      WHEREFORE, National prays that the above action now pending against it in the

12  Superior Court of California in and for the County of Alameda, Case No. RG07352949, be

13  removed therefrom to this Court.

14

15  DATED: November 29, 2007          SEYFARTH SHAW LLP

16

17

By _____
18                          Peter E. Romo, Jr.

19

Attorneys for Defendant
20                     NATIONAL LIFE INSURANCE COMPANY

21

22

23  SF1 28308188.1 / 32732-000008

24

25

26

27

28

3

**EXHIBIT A**

```
*5885994*
```

GREGORY P. BROCK [Bar #181903]
**YORK & BROCK**
A Law Corporation
918 Parker Street, 2nd Floor
Berkeley, California 94710
Telephone:   (510) 841-1171
Facsimile:   (510) 841-1666

Attorneys for Plaintiff
LAURA RUSSO

FILED
ALAMEDA COUNTY

OCT 24 2007

CLERK OF THE SUPERIOR COURT

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| LAURA RUSSO,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>NATIONAL LIFE INSURANCE<br>COMPANY, and DOES 1 to 20,<br><br>　　　　Defendants. | Case No. RG07352949<br><br>**COMPLAINT FOR BREACH OF CONTRACT<br>AND BREACH OF THE IMPLIED<br>COVENANT OF GOOD FAITH AND FAIR<br>DEALING** |

COMES now plaintiff LAURA RUSSO ("Russo") and for causes of

action against defendants, and each of them, alleges as follows:

### FIRST CAUSE OF ACTION

### (Breach of Contract)

1.    Defendant NATIONAL LIFE INSURANCE COMPANY ("National

Life"), is and at all times herein mentioned was, a corporation

organized and existing under the laws of the State of Vermont and

authorized by the California Insurance Commissioner to transact

and transacting business in California as a life insurer.

2.    The true names and capacities, whether individual,

corporate, associate or otherwise, of defendants named herein as

DOES 1 to 20 are unknown to plaintiff, who therefore, names said

YORK,
& BROCK
A Law Corporation
918 Parker Street
2nd Floor
Berkeley, CA 94710
Tel: (510) 841-1171
Fax: (510) 841-1666

1

Complaint

defendants by such fictitious names. Plaintiff will amend this Complaint to show their true names and capacities when the same has been ascertained.

3. Plaintiff is informed and believes, and upon such information and belief, alleges that each of the defendants designated as DOE is legally responsible in some manner for the events and happenings referred to, and proximately caused the damages to plaintiff as herein alleged.

4. Plaintiff is informed and believes, and upon such information and belief, alleges that defendants, and each of them, were and/or are the agents and/or employees of each of the remaining defendants, and were acting within the scope and course of said employment, and/or agency in performance of the acts herein alleged.

5. At all times mentioned herein, plaintiff was the beneficiary of a life insurance policy issued by defendants to Scott Gibbs ("Gibbs").

6. In consideration of premium payments made by Gibbs for the benefit of plaintiff, defendants, by their dully authorized agents, executed in Montpellier, Vermont, their policy of insurance bearing number U189833200, hereinafter referred to as "the policy", wherein and whereat defendants insured Gibbs' life, and agreed, among other things, to pay a Death Benefit to Gibbs' beneficiary under the policy upon receipt of proof of Gibbs' death. A true and correct copy of the policy is attached hereto as Exhibit A, and incorporated herein by this reference as if fully set forth.

7. At all relevant times, Gibbs was a resident of

YORK,
& BROCK
A Law Corporation
918 Parker Street
2nd Floor
Berkeley, CA 94710
Tel: (510) 841-1171
Fax: (510) 841-1666

Complaint

2

1  California.

2  8.    At all relevant times, Russo was Gibbs' beneficiary

3  under the policy, and a resident of California.  Plaintiff is

4  informed and believes, and on that basis alleges, that the Death

5  Benefits to be paid under the policy were to be paid to her at her

6  residence in Alameda County, California.

7  8.    At all relevant times, the Death Benefit on the policy

8  was $80,000.

9  9.    The policy included Grace Period provisions, which

10 provided, in relevant part:

11    On and after the second policy anniversary, if on any
      Monthly Policy Date the amount of the Cash Surrender
12    Value is less than the amount of the Monthly Deduction
      on such date, a Grace Period shall then start.
13
      During a Grace Period this policy shall remain in
14    force.  A Grace Period of 61 days shall be allowed for
      payment of the premium needed for the Cash Surrender
15    Value to equal the amount of the Monthly Deduction for
      such Date plus the next two Monthly Deductions.  We
16    will send the Owner notice of such premium needed.  If
      such premium is unpaid on the later of:
17
18       1. the last day of the Grace Period; or
         2. the 31st day after such notice is sent;
19
      then this policy shall terminate without value and it
20    shall be null and void and all rights shall cease.

21 10.   The Date of Issue of the policy was December 17, 1984.

22 The Monthly Policy Date was the 17th day of each month.

23 11.   Scott Gibbs died on May 5, 2007.

24 12.   As a result of Gibbs' death, a claim was made for the

25 Death Benefit under the above-described policy of insurance with

26 defendants.

27 13.   Defendants denied the claim, stating that the policy had

28 terminated in March 2007 for lack of payment of premiums.

YORK,
& BROCK
A Law Corporation
918 Parker Street
2nd Floor
Berkeley, CA 94710
Tel: (510) 841-1171
Fax: (510) 841-1666

Complaint

3

14. Plaintiff is informed and believes, and on that basis asserts, that defendants failed to provide notice required under the policy, including under the Grace Period provisions alleged herein, that on the Monthly Policy Date prior to the termination of the policy in March 2007, the amount of the Cash Surrender Value was less than the amount of the Monthly Deduction on such date.

15. Plaintiff is informed and believes, and on that basis asserts, that as a result of defendants' failure to provide the notice under the Grace Period provisions of the policy, that the Grace Period has not yet expired, and the policy remains in full force and effect upon payment of all premiums owing.

16. Plaintiff hereby offers to defendants to pay all unpaid premiums owing to defendants under the terms of the policy. Plaintiff is unable, without receiving notice from defendants, to ascertain the amounts of such unpaid premiums owing.

17. Plaintiff and Gibbs have performed all conditions of the policy on their part to be performed. Defendants received, in accordance with the terms of the policy, due and timely written notice and proof of loss concerning this claim. As a proximate result of defendants' failure and refusal as herein alleged, plaintiff has been damaged in a sum of $80,000.

## SECOND CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

18. Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 17 within this cause of action as though fully set forth herein.

19. Implied in the insurance policy as previously described,

YORK,
& BROCK
A Law Corporation
918 Parker Street
2nd Floor
Berkeley, CA 94710
Tel: (510) 841-1171
Fax: (510) 841-1666

Complaint

4

1  was a covenant by the defendants that they would act in good faith
2  and deal fairly with their insured and that they would do nothing
3  to interfere with the rights of their insured to receive the
4  benefits of the agreement.

5  20.   The policy, among other things, provided that Death
6  Benefits were payable to plaintiff upon the death of Gibbs.

7  21.   By the provisions of the policy defendant represented to
8  Gibbs that if Gibbs complied with all the terms and conditions of
9  the policy, defendant would promptly pay to plaintiff the amount
10  of the Death Benefit under the policy upon Gibbs' death.
11  Plaintiff duly complied with all the terms and conditions of the
12  policy on her part to be performed and was legally entitled to be
13  paid the $80,000 Death Benefit under the policy. Consequently,
14  upon Gibbs' death on May 5, 2007, plaintiff became entitled to
15  receive from defendants payment of the value of the Death Benefit
16  of $80,000.

17  22.   In denial of plaintiff's claim under the policy,
18  defendant insurers engaged in unreasonable conduct which violated
19  their covenant of good faith and fair dealing.  The acts of
20  defendant insurers included but were not limited to:

21     a.   Failed to promptly and adequately investigate the facts
22  surrounding the claim being made for the benefit of plaintiff or
23  failed to properly evaluate those facts;

24     b.   Delayed in responding to requests for information made
25  on plaintiff's behalf concerning her claim;

26     c.   Refused to pay the amount agreed upon by Gibbs and
27  defendant insurers in a prompt and timely manner;

28     d.   Failed to communicate adequately and honestly with

YORK,
& BROCK
A Law Corporation
918 Parker Street
2nd Floor
Berkeley, CA 94710
Tel: (510) 841-1171
Fax: (510) 841-1666

Complaint

5



1   plaintiff regarding this claim under the policy;

2       e.   Placed their own interests above the interests of

3   plaintiff and Gibbs;

4       f. Failed to adopt and implement reasonable standards for the

5   prompt investigation and processing of claims arising under the

6   Grace Period provisions of policies similar to plaintiff's;  and

7       g. Failed to adopt and communicate to their claims agents

8   written standards for the prompt investigation and processing of

9   claims under the standards annunciated in 10 CCR 2695.1,

10  et seq. and in violation of 10 CCR 2695.6(a) and(b).

11  Specifically, defendants have no claims manual, claims guidelines

12  or other training materials reflecting the requirements of the

13  standards annunciated 110 CCR 2695.1, et seq.

14      23.  As a direct and proximate result of defendants' wrongful

15  conduct as herein alleged, plaintiff was compelled to retain the

16  services of an attorney and to incur attorney's fees and costs in

17  obtaining the benefits due under the policy.

18      24.  As a direct and proximate result of defendants' failure

19  to pay the policy benefits plaintiff lacked sufficient funds to

20  pay certain bills and other obligations resulting in great

21  emotional distress and financial hardship.

22      25.  As a further direct and proximate result of defendant's

23  wrongful conduct as herein alleged, plaintiff sustained emotional

24  and mental distress, and anguish, embarrassment, mortification,

25  humiliation and indignity, all to her general damage in a sum

26  according to proof.

27      26.  Defendants' wrongful conduct as herein alleged was done

28  intentionally and was malicious, oppressive and fraudulent in

YORK,
& BROCK
A Law Corporation
918 Parker Street
2nd Floor
Berkeley, CA 94710
Tel: (510) 841-1171
Fax: (510) 841-1666

6

Complaint

1    nature and plaintiff is therefore entitled to recover punitive

2    damages.

3      WHEREFORE, plaintiff LAURA RUSSO prays judgment against

4    defendants, and each of them, as follows:

5      1. · For the sum of $80,000 in compensation for the unpaid

6    Death Benefit owed under the life insurance policy issued to Scott

7    Gibbs;

8      2.     For general damages in an amount according to proof

9      3.     For exemplary and punitive damages according to proof;

10      4.     For interest at a legal rate as to all damages sustained

11    by plaintiff in this action;

12      5.     For attorneys fees and costs incurred in having to

13    obtain benefits under the policy;

14      6. For costs of suit herein incurred; and

15      7. For such other and further relief as the court deems just

16    and proper.

17    Date: October 16, 2007          YORK & BROCK

18

19                        Gregory P. Brock,

20                        Attorneys for Plaintiff

21                        LAURA RUSSO

22

23

24

25

26

27

28

YORK,
& BROCK
A Law Corporation
918 Parker Street
2nd Floor
Berkeley, CA 94710
Tel: (510) 841-1171
Fax: (510) 841-1666

Complaint

7

**EXHIBIT  A**

Mutual Company Established 0

# National Life Insurance Company

## Montpelier, Vermont 05604

We, NATIONAL LIFE INSURANCE COMPANY, agree to pay the Death Benefit to the Beneficiary, subject to the terms of this policy, when we receive at our Home Office due proof that the Insured died while this policy was in force.

The data and the terms on this and all following pages are part of this policy.

Signed for NATIONAL LIFE INSURANCE COMPANY at Montpelier, Vermont as of the Date of Issue, by

_Richard F. Friche_  President

_John L. Stotler_ Secretary

_Janet Nelson_ Registrar

Flexible Premium Adjustable Benefit Life Insurance. Adjustable death benefit is payable at death of Insured. Flexible premiums are payable to end of Premium Payment Period or until prior death of Insured. If Insured is living at end of Premium Payment Period, this policy becomes paid up life insurance.

Ten Day Right to Review Policy. This policy, at any time within ten days after its receipt by the Owner, may be returned in person or by mail to us or to the agent through whom it was bought. Upon such return, the policy will be deemed void as of its Date of Issue. We will then refund any premium paid.



# National Life
## of Vermont

1IL-1-R8

# INDEX

| Page | | Page | |
|---|---|---|---|
| 4 | Accumulated Value | 1 | Notices |
| 3 | Assignments | 3 | Ownership |
| 1 | Attained Age | 1 | Payment of Benefits |
| 1 | Basis of Values | 8 | Payment Options |
| 3 | Beneficiary | 4 | Policy Changes |
| 5 | Cost of Insurance | 1 | Policy Effective Dates |
| 2 | Death Benefit | 1 | Policy Months, Years and Anniversaries |
| 1 | Entire Contract | 6 | Paid Up Life Insurance |
| 2 | Grace Period | 2 | Premiums |
| 1 | Incontestability | 2 | Reinstatement |
| 5 | Interest Rate — Accumulated Value | 7 | Reports |
| 6 | Loans | 3 | Suicide Limitation |
| 1 | Misstatement of Age or Sex | 5 | Surrender |
| 5 | Monthly Deduction | 4 | Withdrawals |

Any Riders and Endorsements, and a copy of the application, follow page 9.

DATA SECTION

NUMBER: U189833200                DATE OF ISSUE: DEC. 17, 1984

INSURED: SCOTT GIBBS                  FACE AMOUNT:        $80000

ISSUE AGE: 043              MONTHLY POLICY DATE: 17TH


OWNER: SCOTT GIBBS

BENEFICIARY IS AS STATED IN THE APPLICATION UNLESS LATER CHANGED.


SUMMARY OF COVERAGE


FLEXIBLE PREMIUM ADJUSTABLE BENEFIT LIFE INSURANCE.  ADJUSTABLE
DEATH BENEFIT IS PAYABLE AT DEATH OF INSURED.  FLEXIBLE PREMIUMS
ARE PAYABLE TO END OF PREMIUM PAYMENT PERIOD OR UNTIL PRIOR DEATH
OF INSURED.  IF INSURED IS LIVING AT END OF PREMIUM PAYMENT PERIOD
THIS POLICY BECOMES PAID-UP LIFE INSURANCE.


               MINIMUM FACE AMOUNT:        $25000.00
          MINIMUM WITHDRAWAL AMOUNT:          $500.00
               DEATH BENEFIT OPTION: A


PREMIUMS

PLANNED PERIODIC PREMIUM:            $4458.29 PAYABLE AS ONE PREMIUM

       INITIAL PREMIUM:              $4458.29

MINIMUM MONTHLY PREMIUM:               $84.37

PREMIUM PAYMENT PERIOD:          DEC. 17, 1984 TO DEC. 17, 2036*


   *THIS POLICY MAY TERMINATE PRIOR TO END OF PREMIUM PAYMENT
   PERIOD IF PREMIUMS PAID ARE INSUFFICIENT TO CONTINUE
   COVERAGE TO THAT DATE.


   THE INSURED IS IN A STANDARD MORTALITY CLASS.
   THE INSURED HAS QUALIFIED FOR A NON SMOKER CLASSIFICATION

DATA SECTION

## GUARANTEED BASIS OF CALCULATIONS

| | |
|---|---|
| ACCUMULATED VALUE INTEREST RATE: | 0.36748% COMPOUNDED MONTHLY, WHICH IS EQUIVALENT TO 4.5% COMPOUNDED PER YEAR |
| EXPENSE CHARGE: | 5% OF PREMIUM |
| MORTALITY TABLE: | COMMISSIONERS 1958 STANDARD ORDINARY AGE NEAREST BIRTHDAY |
| LOAN INTEREST RATE: | ADJUSTABLE. SEE ENDORSEMENT |
| MAXIMUM SINGLE PREMIUM FOR $1,000 OF PAID UP INSURANCE: | $925.19 AT ATTAINED AGE 95 |

### TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES (PER $1,000 PER MONTH)

| ATTAINED AGE | | RATE | ATTAINED AGE | | RATE | ATTAINED AGE | | RATE | ATTAINED AGE | | RATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MALE | FEMALE | | MALE | FEMALE | | MALE | FEMALE | | MALE | FEMALE | |
| | 0 | .52 | 13 | 16 | .11 | 41 | 44 | .32 | 69 | 72 | 3.82 |
| | 1 | .14 | 14 | 17 | .12 | 42 | 45 | .35 | 70 | 73 | 4.17 |
| | 2 | .12 | 15 | 18 | .12 | 43 | 46 | .38 | 71 | 74 | 4.53 |
| | 3 | .11 | 16 | 19 | .13 | 44 | 47 | .41 | 72 | 75 | 4.91 |
| | 4 | .11 | 17 | 20 | .14 | 45 | 48 | .45 | 73 | 76 | 5.30 |
| | 5 | .10 | 18 | 21 | .14 | 46 | 49 | .49 | 74 | 77 | 5.71 |
| | 6 | .10 | 19 | 22 | .15 | 47 | 50 | .53 | 75 | 78 | 6.15 |
| | 7 | .10 | 20 | 23 | .15 | 48 | 51 | .58 | 76 | 79 | 6.64 |
| | 8 | .09 | 21 | 24 | .15 | 49 | 52 | .63 | 77 | 80 | 7.19 |
| | 9 | .09 | 22 | 25 | .16 | 50 | 53 | .69 | 78 | 81 | 7.82 |
| | 10 | .09 | 23 | 26 | .16 | 51 | 54 | .76 | 79 | 82 | 8.50 |
| | 11 | .09 | 24 | 27 | .16 | 52 | 55 | .83 | 80 | 83 | 9.25 |
| | 12 | .10 | 25 | 28 | .16 | 53 | 56 | .91 | 81 | 84 | 10.05 |
| | 13 | .10 | 26 | 29 | .16 | 54 | 57 | .99 | 82 | 85 | 10.88 |
| | 14 | .10 | 27 | 30 | .17 | 55 | 58 | 1.08 | 83 | 86 | 11.75 |
| 0 | | .59 | 28 | 31 | .17 | 56 | 59 | 1.19 | 84 | 87 | 12.66 |
| 1 | | .15 | 29 | 32 | .17 | 57 | 60 | 1.30 | 85 | 88 | 13.61 |
| 2 | | .13 | 30 | 33 | .18 | 58 | 61 | 1.42 | 86 | 89 | 14.61 |
| 3 | | .12 | 31 | 34 | .18 | 59 | 62 | 1.55 | 87 | 90 | 15.67 |
| 4 | | .12 | 32 | 35 | .19 | 60 | 63 | 1.70 | 88 | 91 | 16.80 |
| 5 | | .11 | 33 | 36 | .19 | 61 | 64 | 1.86 | 89 | 92 | 18.02 |
| 6 | | .11 | 34 | 37 | .20 | 62 | 65 | 2.03 | 90 | 93 | 19.38 |
| 7 | | .11 | 35 | 38 | .21 | 63 | 66 | 2.22 | 91 | 94 | 20.91 |
| 8 | | .10 | 36 | 39 | .22 | 64 | 67 | 2.43 | 92 | | 22.66 |
| 9 | | .10 | 37 | 40 | .23 | 65 | 68 | 2.65 | 93 | | 24.70 |
| 10 | | .10 | 38 | 41 | .25 | 66 | 69 | 2.90 | 94 | | 27.10 |
| 11 | | .10 | 39 | 42 | .27 | 67 | 70 | 3.18 | | | |
| 12 | 15 | .11 | 40 | 43 | .29 | 68 | 71 | 3.49 | | | |

DATA SECTION
PREPARED ON THE DATE OF ISSUE

DATA SECTION

SURRENDER CHARGES

| POLICY YEAR BEGINNING | SURRENDER CHARGE |
|---|---|
| DEC. 17, 1984 | $1629.25 |
| DEC. 17, 1985 | $1543.50 |
| DEC. 17, 1986 | $1457.75 |
| DEC. 17, 1987 | $1372.00 |
| DEC. 17, 1988 | $1286.25 |
| DEC. 17, 1989 | $1200.50 |
| DEC. 17, 1990 | $1114.75 |
| DEC. 17, 1991 | $1029.00 |
| DEC. 17, 1992 | $943.25 |
| DEC. 17, 1993 | $857.50 |
| DEC. 17, 1994 | $771.75 |
| DEC. 17, 1995 | $686.00 |
| DEC. 17, 1996 | $600.25 |
| DEC. 17, 1997 | $514.50 |
| DEC. 17, 1998 | $428.75 |
| DEC. 17, 1999 | $343.00 |
| DEC. 17, 2000 | $257.25 |
| DEC. 17, 2001 | $171.50 |
| DEC. 17, 2002 | $85.75 |
| DEC. 17, 2003 AND LATER | $0.00 |

THE SURRENDER CHARGE APPLIES TO THE FACE AMOUNT ON THE DATE OF ISSUE.
ANY INCREASE IN FACE AMOUNT WILL RESULT IN ADDITIONAL SURRENDER
CHARGES.

DATA SECTION

## GENERAL TERMS OF
## THIS POLICY

**Consideration.** This policy is issued in consideration of the application and payment of the Initial Premium as shown in the Data Section.

**Entire Contract.** On the Date of Issue the entire contract between the parties is this policy and a copy of the application which is attached at issue. Any changes of this contract must be written and may be made only by one of our authorized officers or registrars. We will send the Owner a copy of any application for a change which we approve. It and any additional Data Section shall become part of this contract on the effective date of such change.

**Payment of Benefits.** We will pay all benefits under this policy at our Home Office. Before payment of any death benefit we may investigate the death.

**Notices.** Unless this policy provides otherwise, any requests for changes or notices:

1. from us to the Owner shall be sent to the last address known to us of the Owner; and

2. from the Owner to us must be in writing and received by us at our Home Office in Montpelier, Vermont.

**Policy Months, Years and Anniversaries.** Policy months, years and anniversaries shall be measured from the Date of Issue. The Monthly Policy Date shown in the Data Section occurs on the same day each month or on the last day of any month having no such date. The Date of Issue is the first Monthly Policy Date.

**Policy Effective Dates.** The Face Amount on the Date of Issue shall become effective on the Date of Issue shown in the Data Section.

Any Increase in Face Amount shall become effective on the Monthly Policy Date on or next following the date we approve the application for such Increase in Face Amount.

Any decrease in Face Amount requested shall become effective on the Monthly Policy Date on or next following the date we approve the request for such decrease.

Any reinstatement of this policy shall become effective on the Monthly Policy Date on or next following the date we approve the application for reinstatement.

Any change of Death Benefit Option shall become effective on the Monthly Policy Date on or next following the date we approve the request for such change.

**Misstatement of Age or Sex.** The Issue Age shown in the Data Section is the age of the Insured on the Insured's birthday nearest to the Date of Issue. It is based on the date of birth shown in the application. If the age or sex of the Insured has been misstated, we will adjust the Accumulated Value to be the amount it would have been had the Monthly Deductions been based on the correct age and sex of the Insured. The adjustment shall take effect on the Monthly Policy Date on or next following the date when we have proof to our satisfaction of such misstatement. If the Insured has died, we will adjust the Accumulated Value as of the last Monthly Policy Date prior to the Insured's death; however, if the Accumulated Value is insufficient, we will adjust the Death Benefit.

**Attained Age.** The Attained Age of the Insured on any date is the Issue Age shown in the Data Section plus the number of policy years and months which have passed since that date.

**Basis of Values.** The guaranteed values for this policy are equal to or greater than those required by law. The guaranteed values are based on the Accumulated Value Interest Rate and Mortality Table shown in the Data Section. A detailed statement of the method of computing values has been filed in the state in which this policy is delivered.

## INCONTESTABILITY
## AND REPRESENTATIONS

**Incontestability.** After this policy has been in force during the life of the Insured for two years from the Date of Issue, we will not contest it; however,

1. we may contest any Increase in Face Amount for which an application is required until such Increase has been in force during the life of the Insured for two years from its effective date; and

2. we may contest any reinstatement until such reinstatement has been in force during the life of the Insured for two years from its effective date.

**Representations.** Any statement made by or for the Insured shall be deemed a representation and not a warranty. Unless such statement is in the attached application or in any subsequent application, it shall not be used to:

1. avoid this policy; or

2. avoid any Increase in Face Amount; or

3. avoid any reinstatement; or

4. defend any claim.

## PREMIUMS

SEE ENDORSEMENT

**Payment of Premiums.** We will incur no liability if no premium is paid. The Initial Premium is shown in the Data Section. It is due on the Date of Issue.

Planned Periodic Premiums may be paid during the life of the Insured and prior to the last day of the Premium Payment Period. The Planned Periodic Premium and its frequency are shown in the Data Section. The amount or frequency may be changed at any time; however, we may limit any increase in either amount or frequency.

Premiums other than Planned Periodic Premiums may be paid at any time prior to the last day of the Premium Payment Period. We may limit the number and amount of such premiums.

All premiums must be paid to us at our Home Office. Any premium paid must be at least $20. The Initial Premium may be paid to us through our duly authorized agent in exchange for a receipt signed by that agent.

**Grace Period.** During the first two policy years a Grace Period will start on a Monthly Policy Date if both of the following occur:

1. the amount of the Cash Surrender Value is smaller than the amount of the Monthly Deduction on that date; and

2. the sum of:

   a. all premiums paid; less

   b. all withdrawals; less

   c. any debt to us on this policy,

   is smaller than the amount of the Minimum Monthly Premium shown in the Data Section multiplied by the number of months elapsed since the Date of Issue.

On and after the second policy anniversary, if on any Monthly Policy Date the amount of the Cash Surrender Value is less than the amount of the Monthly Deduction on such date, a Grace Period shall then start.

During a Grace Period this policy shall remain in force. A Grace Period of 61 days shall be allowed for payment of the premium needed for the Cash Surrender Value to equal the amount of the Monthly Deduction for such Date plus the next two Monthly Deductions. We will send the Owner notice of such premium needed. If such premium is unpaid on the later of:

1. the last day of the Grace Period; or

2. the 31st day after such notice is sent;

then this policy shall terminate without value and it shall be null and void and all rights shall cease.

**Reinstatement.** If this policy terminates after the end of a Grace Period it may be reinstated. It must be reinstated within five years from the start of such Grace Period and prior to the last day of the Premium Payment Period.

We will require:

1. an application for reinstatement; and

2. proof to our satisfaction that the Insured is insurable; and

3. payment of an amount equal to the Monthly Deduction for the next three policy months starting on the effective date of such reinstatement.

## DEATH BENEFIT

**Death Benefit Options.** The Death Benefit Option is shown in the Data Section. While the Insured is living, it may be changed by the Owner at any time after the first policy anniversary and prior to the last day of the Premium Payment Period by written notice to us.

During the Premium Payment Period, the Death Benefit will differ under the two Death Benefit Options.

Option A. Under Option A, the Death Benefit shall be:

1. the Face Amount on the date of the Insured's death; less

2. the amount of any then due Monthly Deductions; less

3. any debt to us on this policy.

Option B. Under Option B, the Death Benefit shall be:

1. the Face Amount on the date of the Insured's death; plus

2. the Accumulated Value on the date of the Insured's death; less

3. the amount of any then due Monthly Deductions; less

4. any debt to us on this policy.

If, on or after the last day of the Premium Payment Period, the Insured dies while this policy is in force, the Death Benefit shall be the amount of paid up insurance less any debt to us on this policy.

**Death Benefit.** We will pay the Death Benefit to the Beneficiary when we receive at our Home Office due proof that the Insured died while this policy was in force. We will pay the Death Benefit in one sum unless a payment option is chosen. If the Death Benefit is paid in one sum, it shall be increased by interest from the date of the Insured's death to the date of payment. We will set the rate of interest at not less than the Accumulated Value Interest Rate shown in the Data Section.



**Suicide Limitation.** If the death of the Insured within two years of the Date of Issue results from suicide, while sane or insane, we will pay only a sum equal to the premiums paid less any debt to us on this policy, and less any withdrawals made.

If this policy has been in force for two years from the Date of Issue, a similar two year period shall apply to any Increase in Face Amount for which an application is required. Such period shall begin on the effective date of any such Increase. During such period if the death of the Insured results from suicide, while sane or insane, we will pay, in lieu of any such Increase in Face Amount, only a sum equal to the Cost of Insurance that we have deducted from the Accumulated Value for such Increase; however, if such Increase became effective within two years after the effective date of a reinstatement, we will pay only the amount set forth in the next paragraph.

If this policy is reinstated, a similar two year period shall start from the effective date of the reinstatement. During such period, if the death of the Insured results from suicide, while sane or insane, we will pay only a sum equal to:

1. the premiums paid since the effective date of the reinstatement; less

2. any debt to us on this policy; less

3. any withdrawals made since the effective date of the reinstatement.

## POLICY OWNERSHIP

**General Ownership Terms.** The Owner may:

1. exercise the rights under this policy; and

2. assign the policy; and

3. release or discharge the policy; and

4. change the policy if we agree to such change; and

5. enjoy the benefits under this policy.

These actions may be taken without the consent and against the interest of any Beneficiary and any contingent owner. If the Owner cannot change the Beneficiary, these actions may be taken only by the Owner and the Beneficiary jointly. These actions may be taken only while the Insured is alive.

**Assignments.** We are not responsible for the validity or effect of any assignment of this policy. We will not recognize any assignment until it has been filed at our Home Office. The interest of any Beneficiary whom the assignor can change and of any contingent owner shall be transferred to the assignee by the terms of any assignment. If the assignee acquires a right to proceeds, they shall be paid in one sum even though a payment option may be in effect at the time the assignment was signed.

## BENEFICIARY

**General Beneficiary Terms.** The Owner has the right to change the Beneficiary. If the Owner expressly waives this right, no change can be made. Unless later changed, the Beneficiary shall be as stated in the application. The interest of any Beneficiary who dies before the Insured shall vest in the Owner unless otherwise stated.

If used, the term "children" of any person, shall include only lawful children born to or legally adopted by that person.

We may rely on an affidavit by any person who in our judgment knows the facts to identify any Beneficiary or payee not specified by name. All our liability shall cease when we pay on the basis of such affidavit.

**Change of Beneficiary.** If the Owner has the right, a new Beneficiary may be named from time to time during the life of the Insured by filing at our Home Office written notice in such form as we may require. When notice is received at our Home Office, the change shall take effect on the date the notice is signed whether or not the Insured is living at the time of receipt. We will not be liable for any payment we make before receipt of the written notice at our Home Office.

SEE ENDORSEMENT

## POLICY CHANGES

**Policy Changes.** We will send the Owner an additional Data Section if any of the following changes are made. While the Insured is living, these changes may be made after the first policy anniversary and prior to the last day of the Premium Payment Period by written request to us.

1. The Owner may apply for an Increase in Face Amount. We will require an application and proof to our satisfaction that the Insured is then insurable. An Increase in the Face Amount shall occur when, as a result of an application we approve for such Increase, the Face Amount is greater than the Face Amount on the day prior to the effective date of such Increase.

2. The Owner may request a decrease in Face Amount. The Face Amount may not be decreased to less than the greater of:

   a. the Minimum Face Amount shown in the Data Section; and

   b. 75% of the largest total Face Amount in force at any time in the twelve policy months prior to our receipt of the request.

   A decrease in Face Amount shall apply in the following order:

   a. first, to the most recent Increase in Face Amount; and

   b. then, to the next most recent Increases in Face Amount, successively; and

   c. lastly, to such of the Face Amount on the Date of Issue as is in force on the effective date of the decrease.

3. The Owner may change the Death Benefit Option.

   a. If a change is made from Option A to Option B, the Face Amount shall decrease. On the effective date of such change, the Face Amount shall be equal to the Face Amount just prior to the change, less the Accumulated Value just prior to the change. However, no change shall be allowed which would result in a Face Amount less than the Minimum Face Amount shown in the Data Section.

   b. If a change is made from Option B to Option A, the Face Amount shall increase. On the effective date of such change, the Face Amount shall be equal to the Face Amount just prior to the change plus the Accumulated Value just prior to the change. No additional Surrender Charges shall be imposed because of this change.

## POLICY VALUES AND WITHDRAWALS

**Accumulated Value.** The Accumulated Value on the Date of Issue is equal to the net premium paid less the Monthly Deduction for the first policy month.

If this policy is reinstated, the Accumulated Value on the Monthly Policy Date just prior to the effective date of a reinstatement shall be deemed equal to zero.

On any Monthly Policy Date after the first Monthly Policy Date, the Accumulated Value shall be equal to:

1. the Accumulated Value on the just prior Monthly Policy Date; plus

2. one month's interest on the Accumulated Value on the just prior Monthly Policy Date; plus

3. the amount of all net premiums received since the just prior Monthly Policy Date; plus

4. interest on net premiums received since the just prior Monthly Policy Date from the date of receipt to the Monthly Policy Date; less

5. any withdrawals on the Monthly Policy Date; less

6. the Monthly Deduction for the month next following the Monthly Policy Date.

On any other day the Accumulated Value shall be equal to:

1. the Accumulated Value on the just prior Monthly Policy Date; plus

2. interest on the Accumulated Value on the just prior Monthly Policy Date from the just prior Monthly Policy Date to such day; plus

3. the amount of all net premiums received since the just prior Monthly Policy Date; plus

4. interest on net premiums received since the just prior Monthly Policy Date from the date of receipt to such day.

A net premium is equal to the amount of any premium paid, less the amount of the Expense Charge shown in the Data Section.

**Interest Rates Credited to the Accumulated Value.** The rate of interest credited on any portion of the Accumulated Value shall never be less than the Accumulated Value Interest Rate shown in the Data Section.

The rate of interest credited on the first $1,000 of the Accumulated Value shall be the Accumulated Value Interest Rate shown in the Data Section.

On any Accumulated Value in excess of $1,000, we may credit interest at a higher interest rate.

For any Accumulated Value in excess of $1,000, interest at different rates may be credited to:

1. that portion which is equal to any unpaid loan and unpaid loan interest on this policy; and

2. any portion in excess of any such unpaid loan and unpaid loan interest.

**Monthly Deduction.** A Monthly Deduction shall be the Cost of Insurance plus the monthly cost of any additional benefit riders in force on this policy.

**Cost of Insurance.** The Cost of Insurance rate on any day shall be based on the duration of this policy, the Insured's sex and then Attained Age, the rate class of the Face Amount on the Date of Issue, and the rate class of each Increase in Face Amount.

On any Monthly Policy Date, the Cost of Insurance shall be:

1. the Cost of Insurance rate on such date divided by $1,000; multiplied by

2. the excess of:

   a. the Death Benefit on such date divided by one plus the monthly Accumulated Value Interest Rate shown in the Data Section; over

   b. the Accumulated Value less any debt to us on this policy on such date.

We may change the Cost of Insurance rates from time to time based on our expectations of future experience. Any change in the Cost of Insurance rate shall apply to all policies of the same duration, insuring persons of the same sex, Attained Age, and rate class as the Insured. The Cost of Insurance rates shall not be greater than the rates set forth in the Table of Guaranteed Maximum Cost of Insurance Rates shown in the Data Section. These rates are based on the Mortality Table named in the Data Section.

The rate class of the Insured at the time of an Increase in Face Amount may differ from the rate class on the Date of Issue. For determining the Cost of Insurance, if the Accumulated Value is part of the Face Amount:

1. the Accumulated Value is first considered part of the Face Amount on the Date of Issue; and

2. then, if the Accumulated Value is more than the Face Amount on the Date of Issue, the excess is considered part of the Increases in Face Amount in the order of occurrence of such Increases.

**Cash Surrender.** The Owner may, by written request to us, surrender this policy while the Insured is living for its Cash Surrender Value. We may require that the policy be returned to us. We may defer payment of any Cash Surrender Value for not more than six months. If we defer such payment for more than 30 days, we will pay interest at a rate not less than the Accumulated Value Interest Rate shown in the Data Section, from the date we receive such request and the policy, if required, to the date of payment. When this policy has been surrendered, it shall be null and void and all rights shall cease.

The Cash Surrender Value on any day prior to the last day of the Premium Payment Period shall be equal to:

1. the Accumulated Value on such day; less

2. any debt to us on this policy; less

3. any Surrender Charge which applies on such day.

After the Premium Payment Period, the Cash Surrender Value is as set forth in Paid Up Life Insurance.

The Surrender Charges are shown in the Data Section. Additional Surrender Charges shall apply to any Increases in Face Amount. We will send to the Owner notice of the amounts and durations of Surrender Charges that apply to any such Increases.

**Withdrawals.** After the first policy anniversary and prior to the last day of the Premium Payment Period, the Owner may make withdrawals by written request to us. We may limit the number of withdrawals to two per policy year. Withdrawals shall be subject to all of the following terms.

1. Withdrawals may be made only on a Monthly Policy Date which follows receipt of such request.

2. The amount withdrawn may not be less than the Minimum Withdrawal Amount shown in the Data Section.

3. The amount withdrawn may not exceed:

   a. the Cash Surrender Value on the Monthly Policy Date; less

   b. the Monthly Deductions for the two next following Monthly Policy Dates.

We may defer payment of any withdrawal for not more than six months. If we defer such payment for more than 30 days we will pay interest from the date we receive such request to the date of payment at a rate not less than the Accumulated Value Interest Rate shown in the Data Section.

If Death Benefit Option A is in effect on the date of the withdrawal, the Face Amount shall be decreased by the amount withdrawn.

**Option 4 — Payments of a Stated Amount.** Equal monthly payments of a stated amount shall be made until the proceeds, with interest at 3½% per year on the unpaid balance, are used up. The first payment shall be made on the Effective Date. The amount chosen must be at least $10 per month for each $1,000 of proceeds placed under this option. We may add more interest to the unpaid balance in any year, which will extend the number of payments. The last payment will be for the balance only.

**Option 5 — Life Annuity.** Equal monthly payments shall be made in the same manner as Option 3 except:

1. the amount of each payment shall be 103½% of the monthly income provided by our Immediate Annuity rates on the Effective Date, adjusted for the first payment being made on that date; and

2. no additional interest shall be paid.

**Withdrawals.** The right of withdrawal may be included in the choice of Options 1, 2, or 4.

1. Under Options 1 and 4 all or any part of the remaining value may be withdrawn at any time. Not more than four partial withdrawals may be made during any calendar year.

2. Under Option 2 the entire remaining value may be withdrawn at any time.

No withdrawals may be made under Options 3 or 5.

**Change of Payment Option.** The right to change options may be included in the choice of Options 1, 2, or 4. At the time of change the remaining value under the old option shall become the proceeds to be placed under the new option.

**General Payment Option Terms.** An option cannot be chosen after the proceeds have been paid.

If the proceeds to be placed under an option are less than $2,000, we may pay them in one sum to the payee who otherwise would receive the first payment under the option.

If any payments would be less than $20, we will change the frequency to provide payments of at least $20.

The Effective Date of any option is the date the proceeds become payable.

We may require proof to our satisfaction that any payee is alive on the date any payment is due.

If the proceeds are assigned on the Effective Date of an option, we will pay the assignee's share in one sum and place only the balance under the option. After the Effective Date neither the payments nor the remaining value may be assigned or encumbered. To the extent the law permits, they are not subject to any claims against the payee.

We may issue a document stating the terms of the option.

Application **National Life Insurance Company**
Montpelier, Vermont 05602

Policy number

**SAN FRANCISCO AGENCY**
Agency name and number

**No. 14886**
**Part A**
Questions 1-9, 14, 20-28 and 35-40 refer to proposed insured

| | |
|---|---|
| 1. Full name of proposed insured *(Print first, middle and last name)* | Scott Gibbs |

2. Social Security number **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**

| 3. Birthdate *(Mo-Day-Yr.)* 6/28/41 | 4. Sex ☒ M ☐ F | 5. Birthplace Evanston Illinois | 6. Issue policy at age 43 |

7. Residence address *(Give street and number, city or town, state and zip code)* 3101 Lincoln Ave. Alameda, CA. 9450

8A. Employer and kind of business

Self — TV Production

B. Business address

Same

9A. Occupation and specific duties

Video Director/Cameraman

B. How long in present occupation 20 YRS.
C. Any change contemplated? *(If "Yes" explain in remarks)* ☐ Yes ☒ No

**LIFE INSURANCE** *(Questions 1-25)* **DISABILITY** *Questions 1-9, 20-40)*

| 10. Plan Uniflex | 11. Amount N/A |

15A. Premium interval
☒ Annual  12 Months
☐ Semiannual  6 months

B. Special Billing Type
☐ Group

12. Additional Benefits

☐ YRT Rider
☐ Yr. Reducing Term Rider
☐ Additional Insurance Option
☐ Children Protection Benefit
☐ Family Protector Benefit
☐ Units of Cost of Living Rider
☐ Additional Purchase Benefit Rider
☐ Beneficiary Insurance Option *(Complete Form 1446)*
☐

☐ Cash        N/A        ☐ Deferred Applied
☐ Applied to A-COM        ☐ Dividend Term Option
☒ Dividend Held        at age
☐ Paid up Additions

☐ Residence        ☐ Business        ☐ Other
☒ Address No. 7        ☐ Automatic bill        ☐ Address No. 7

13. Owner *(If owner is a minor, complete form 1-48)*

☒ Insured
☐
☐ corporation, its successors or assigns
☐ while living
thereafter
contingent owner while
living, and thereafter the ☐ executors or administrators of
survivors,        last survivor of the named owners
☐ insured
☐ As per supplemental request

Owner's address

Owner's Social Security
or Taxpayer Ident. No.

18. Automatic payment of premium is    requested.

Beneficiary

First

Joanna T. Gibbs
4-12-69
daughter

Second

Estate of Insured

Payment will be shared equally by all first beneficiaries who survive the insured. If none, by all second beneficiaries who survive the insured. If none, payment will be made to owner or executors or administrators of the owners estate

☐ As per supplemental request

The right to change this beneficiary is reserved

14. Do you now smoke cigarettes or have you smoked any
cigarettes within the last 12 months?    ☐ Yes ☒ No

| 20. Life insurance in force (if "None" so state) Company (including group) *B G A Nat'l Life Well Fargo* | Total Amount $ *7,178* *57,000* | Total with Waiver of Premiums $ | Total Accidental Death Benefit $ |
|---|---|---|---|

21A. Has there been or will there be a sale, conversion, assignment, or conversion, to reduce amount, premium or period of coverage of any existing life or disability or annuity contract if the applied for policy is issued? ☒ Yes ☐ No

B. Will there be any substantial borrowing on any life insurance policy if the applied for policy is issued? ☐ Yes ☒ No
*If "Yes", complete above also.*

22. Have you ever applied for life, health or disability insurance or reinstatement of life, health or disability insurance which was declined, postponed or modified in any way?
*If "Yes", give details in remarks.* ☐ Yes ☒ No

23. Have you ever been or do you have an intention of becoming a pilot or crew member of any type of aircraft?
*If "Yes", complete aviation form 14871.* ☐ Yes ☒ No

24. Have you within the last two years participated in, or do you intend to participate in, any motor powered racing, scuba, skin or sky diving, rodeos or any other avocation generally considered hazardous?
*If "Yes", complete avocation form 1150.* ☒ Yes ☐ No

25. Do you intend to travel or reside outside the USA?
*If "Yes", complete foreign travel form 1450.* ☒ Yes ☐ No

26. Are you or do you have any intention of becoming a member of a military organization?
*If "Yes", give details in remarks.* ☐ Yes ☒ No

27. Is there other negotiations for life or disability insurance pending?
*If "Yes", give company, amount & reason in remarks.* ☐ Yes ☒ No

28. Have you had your motor vehicle driving license suspended or revoked during the last two years?
*If "Yes", give details in remarks.* ☐ Yes ☒ No

## DISABILITY *(Questions 1-9, 20-40)*

| 29. Plan and amount |
|---|

A. Disability Income
☒ DI-3A ☐ DI-2A ☐ DI-1A
☐ DI-4A ☐ DI-4A Step Rate ☐ DI-105

| | Basic Policy | ADI Rider | ADI Rider |
|---|---|---|---|
| Monthly Income | $ *4000* | $ | $ |

Start Date: *31st*

Accident Benefit Period: *to 65*

Sickness Benefit Period: *to 65*

☐ 12 months times the maximum monthly
☐ 24 months overhead expense benefit
☐ Retroactive overhead expense benefit

| 30. Additional Benefits |
|---|
| ☒ Residual Disability Income |
| ☐ Lifetime Specific Loss: $ _____ per month |
| ☐ Cost of Living: |
| ☐ Hospital Confinement Income: $ _____ per month |
| ☐ Lifetime Sickness: $ _____ per month |
| ☒ Additional Insurance Option: $ *7,000* per month |
| ☐ Accidental Death and Dismemberment: $ Beneficiary: |
| Relationship: |

31. Use of dividends:
☐ Cash ☒ Applied

32. Owner *Insured*
Owner's address: _____
_____
Owner's Social Security or Taxpayer Ident. No. _____

33A. Premium interval:
☐ Annual *12 Months*
☐ Semiannual *6 Months*
☐ Quarterly *3 Months*
☒ COM *1 Month*

B. Special Billing Type
☐ Group
☐ Payroll Deduction

35. Is your employer paying the premium? ☐ Yes ☒ No

36. Annual earned income: from employer $ *90,000*
pension contribution: $ _____
*(Give source in remarks)* other sources: $ _____

37. Annual unearned income: $ _____

38. Is any of your income guaranteed during disability as part of a formal salary continuation or sick leave plan? ☐ Yes ☒ No
*If Yes:* for $ _____ for _____ months

39. Do you understand and agree that for each separate period of disability no total disability benefit is payable until the Start Date specified in section 29A? ☒ Yes ☐ No

| 40. Disability insurance in force *(if "None" so state)* Company *(include group)* *None* | Monthly Benefit | Benefit Period | Purpose *Personal income replacement or business etc.* |
|---|---|---|---|

41. Home Office corrections and amendments:

Not applicable to Disability Insurance

ILL 1-1400-23
3. Initial Premium is changed to
#H. 458.49

42. Remarks and additional directions.

(IA) National Life pol. #
14886 will be cash
surrendered and used
for initial deposit on
Uniflex App. # 14886.

(1) The statements and answers on Part A of this application are, to the best knowledge and belief of the proposed insured, complete and true. They together with the statements and answers on part B of this application shall be a part of the contract of insurance if one be issued. The applicant, if someone other than the proposed insured agrees to be bound by all statements and answers signed by the proposed insured in parts A and B of this application. (2) The agent taking this application has no authority to make, change or discharge any contract hereby applied for. The agent may not extend credit on behalf of the Company. No statement made to or information acquired by any representative of the Company shall bind the Company unless set out in writing in parts A or B of this application. (3) The Company shall incur no liability under any policy issued on this application unless and until (A) such policy is delivered to the owner, and (B) the first premium is paid prior to any change in the health of the insured. Any conditional receipt issued, which bears the same number as this application, may provide otherwise. (4) Acceptance of any policy issued on this application will ratify any correction in or amendment to the application noted by the Company in the space headed "Home Office corrections and amendments." A copy of the amended application attached to the policy will be sufficient notice of the change made. If the laws where the application is made so require, any change of amount, age at issue, class-of-risk, plan of insurance or benefits must be ratified in writing.

I have paid $ _____ for Life Insurance, $ _____ for Disability Insurance with this application. I have received a conditional receipt and have read it and understand it.

**AUTHORIZATION**

I, the proposed insured, hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person, that has any records or knowledge of me or my health, to give to the National Life Insurance Company or its reinsurers any such information. I also acknowledge receipt of copies of the pre-notifications relating to investigative consumer reports and the Medical Information Bureau. A photographic copy of this authorization shall be as valid as the original.

Signed at _____
(City & State)

_____ Dec / 2 ___19___

Scott Gibbs
Print name of proposed insured

Applicant_____
Sign name in full

Proposed Insured _____
Sign name in full

Only one signature required when proposed insured is the applicant

Soliciting Agent_____
Sign name in full

To: National Life Insurance C
Montpelier, Vermont 0560

U 1898332
Policy number
SAN FRANCISCO AGENCY
Agency name and number

## Supplemental Application for
## Flexible Premium Adjustable Benefit Life Insurance

Name of proposed Insured *(print first. middle & last name)*

Phillip S. Gibbs          Scott Gibbs

1.  Face Amount                                         $ 86,000

2.  Death Benefit Option *(choose one)*

    ☒ Option A. Face Amount

    ☐ Option B. Face Amount, plus Accumulated Value      Surrender value of Rit'/ Life
                                                         as of 8/12

3.  Initial Premium   AMENDED                            $ 4381.84

4.  Planned Periodic Premium                             $ 0

5.  Remarks and Additional Directions

_____

_____

_____

_____

This application supplements and is submitted as a part of a life application made to National Life Insurance Company. All of the terms of the life application apply: however.

1.  the word "Amount" is replaced by "Face Amount"; and
2.  the word "Premium" is replaced by "Planned Periodic Premium". and
3.  Automatic Payment of Premium does not apply.

Signed at   Alameda          CA   on the   12   day of   December   19 89
*(City and State)*

Applicant _____
*(Sign name in full)*

Soliciting Agent _____
*(Sign name in full)*

Proposed Insured X  Scott Gill
*(Sign name in full)*
Only one signature required when Proposed
Insured is the applicant

No. 14886
Part B
...onal Life Insurance Compan...
Montpelier, Vermont 05602

1898332

| A. 1. Full name of proposed insured SCOTT GIBBS | | 2. Place of birth EVANSTON, ILL. | | 3. Date of birth 6/28/41 |
|---|---|---|---|---|
| B. 1. Name of your personal physician None | | 2. Address of your personal physician | | |
| 3. Date and reason last consulted | | | | If any question is answered "Yes", give dates and details include name and address of physician consulted |

| | Yes or No | |
|---|---|---|
| C. 1. To the best of your knowledge, is your health impaired in any way? | NO | |
| 2. Are you taking any medications currently? If so, what? | NO | |
| 3. Have you ever received a medical separation from or rejection by any branch of the armed forces? | NO | |
| 4. Have you ever applied for or received disability compensation from any source? | NO | |
| D. 1. Have you within the past 10 years been advised by a physician to reduce your alcohol intake? | NO | |
| 2. Except as prescribed by a physician, have you ever used narcotic drugs, amphetamines, barbiturates, tranquilizers, hallucinogens, or marijuana? | NO | |
| 3. To the best of your knowledge, has any member of your family had diabetes, heart disease or polycystic kidney disease? | NO | |
| 4. Have you ever been advised to change your residence or occupation because of your health? | NO | |
| E. To the best of your knowledge, within the past ten years, have you had: | | |
| 1. Chest pain, heart murmur, rheumatic fever or anemia? | NO | |
| 2. Habitual cough, asthma, emphysema or pleurisy? | NO | |
| 3. Ulcer, jaundice, or chronic indigestion? | NO | |
| 4. Dizzy spells, convulsions, paralysis or unconsciousness? | NO | |
| F. To the best of your knowledge, within the past ten years, have you received professional treatment or advice for disease or disorder of: | | |
| 1. Heart, veins, arteries, blood or blood pressure? | NO | |
| 2. Lungs or respiratory tract? | NO | |
| 3. Stomach, intestines, liver or gall bladder? | NO | |
| 4. Kidney, bladder, prostate, genito-urinary organs, pelvic organs or breast? | NO | |
| 5. Eyes, ears, nose or throat? | NO | |
| 6. Brain or nervous system? | NO | |
| 7. Skin, glands, bones, joints or spine? | NO | |
| ...................... | | |
| ...................... | | |
| Cancer or other tumor? | NO | |
| 2. Gout, arthritis or rheumatism? | NO | |
| 3. High blood sugar or diabetes? | NO | |
| 4. Albumin, sugar, casts, pus or blood in the urine? | NO | |
| 5. Renal colic or kidney stone? | NO | |
| 6. Emotional disturbance? | NO | |
| H. Have you had x-rays or electrocardiograms made in the past five years? If so, where? HILLSDALE MALL MEDICAL CLINIC | YES | FOR VISA TO BRAZIL |
| I. Have you in the past five years been in or do you plan to enter or have you been advised to enter a hospital for observation, operation or treatment? | NO | |
| J. Have you consulted any physicians other than your personal physician in the cast five years? | NO | |

| K. Family History | Age if alive | State of health | Age at death | Cause of death |
|---|---|---|---|---|
| Father | | | 70 | EMPHYSEMIA |
| Mother | 75 | EXCELLENT | | |
| Sisters and Brothers: | | | | |
| Alive | 2 | | | |
| Dead | | | | |

L. 1. Height in shoes ___6___ ft ___1___ in.
2. Weight in clothes ___185___ pounds
3. Change in weight in past year.
   Gain ___ pounds  Loss _2_ pounds
   Reason BEGAN RUNNING

I have read the answers to the foregoing questions. They are correctly recorded and they are complete and true, to the best of my knowledge and belief...

Witness
12/18/54

Scott Gibbs
Signature of proposed insured

**PART B**    NATIONAL LIFE INSURANCE COMPANY, MONTPELIER, VERMONT    189.3332

| A. 1. Full Name of Proposed Insured | 2. Place of birth | 3. Date of birth |
|---|---|---|
| _SCOTT — GIBBS_ | Evanstore, Illinois | 6-28-41 |

| B. 1. Name of your Personal Physician | 2. Address of Your Personal Physician |
|---|---|
| None | |

| | Yes or No | If any question is answered "Yes," give dates and details. Include name and address of physician consulted. |
|---|---|---|
| 3. Date and Reason Last Consulted | | |
| C. 1. To the best of your knowledge, is your health impaired in any way? | no | G. I. + P Complete Physical 8/54 |
| 2. Are you taking any medications currently? If so, what? | no | |
| 3. Have you ever received a medical separation from or rejection by any branch of the armed forces? | no | "Immediate Care at Hillsdale" - 33 |
| 4. Have you ever applied for or received disability compensation from any source? | no | Hillsdale Mall, San Mateo, Ca 94403 |
| D. 1. Have you within the past 10 years been advised by a physician to reduce your alcohol intake? | no | All normal. |
| 2. Except as prescribed by a physician, have you ever used on a regular basis narcotic drugs, amphetamines, barbiturates, tranquilizers, hallucinogens, or marijuana? | no | E. 1979 (A) Inguinal Hernia Kaiser Hosp |
| 3. To the best of your knowledge, has any member of your family had diabetes, high blood pressure, insanity, heart disease or oolycystic kidney disease? | no | 280 W MacArthur Bl Oakland, Ca 94611 |
| 4. Have you ever been advised to change your residence or occupation because of your health? | no | Immediate incident to hernia - 2 minutes |
| E. To the best of your knowledge, within the past 10 years, have you had or have you received professional treatment or advice for disease or disorder of: | | |
| 1. Lungs or respiratory tract (including habitual cough, asthma, emphysema, pleurisy or tuberculosis)? | no | |
| 2. Heart, veins, arteries, blood or blood pressure (including chest pain, heart murmur, rheumatic fever, shortness of breath, fainting, palpitation or anemia)? | no | |
| 3. Stomach, intestines, liver, gall bladder (including ulcer, jaundice, indigestion or other disease of the digestive tract)? | yes | |
| 4. Kidneys, bladder, prostate, genito-urinary organs, pelvic organs or breast (including renal colic or kidney stone)? | no | |
| F. To the best of your knowledge, within the past 10 years, have you had or have you received professional treatment or advice for: | | |
| 1. Gout, cancer or other tumor? | no | |
| 2. Disease or disorder of eyes, ears, nose or throat? | no | |
| 3. Dizzy spells, convulsion, paralysis, unconsciousness? | no | |
| 4. Nervous or mental trouble? | no | |
| 5. Disease or disorder of skin, glands, bones or spine? | no | |
| 6. Albumin, sugar, casts, pus or blood in the urine? | no | |
| G. 1. Have you had x-rays or electrocardiograms made in the past five years? If so where? | yes | |
| 2. Have you in the past five years been in or do you plan to enter or have you been advised to enter a hospital for observation, operation or treatment? | no | |
| 3. Have you within the past 10 years' been advised by a physician that you had high blood sugar or diabetes? | no | |
| H. Have you consulted any physician other than your Personal Physician in the past five years? | yes | |

| I. Family History | Age if Alive | State of Health | Age at Death | Cause of Death | J. |
|---|---|---|---|---|---|
| Father | | | 70 | Emphysema | 1. Height in shoes _6_ ft. _4½_ in. |
| Mother | 75 | Excellent | | | 2. Weight in clothes _194_ pounds |
| Sisters and Brothers: | 51 | Good | | | 3. Change in weight in past year: |
| Alive _2_ | 40 | Good | | | Gain _____ pounds |
| | | | | | Loss _20_ pounds |
| Dead _____ | | | | | Reason: _Running & Diet_. |

I have read the answers to the foregoing questions, they are correctly recorded and they are complete and true, to the best of my knowledge and belief.

Dated _____ _12-14_ 19 84

Witness _Joann Walliker RN_

Signature of Proposed Insured _Scott Gibbs_

## LIFE INSURANCE QUALIFICATION ENDORSEMENT

Effective as of the date of issue, this policy is amended and modified as set forth below.

The following changes are being made in this policy with the intention that it qualify as "Life Insurance" under Section 101 of the Internal Revenue Code of 1954, as amended in 1982 (hereafter called Section 101).

1. The Death Benefit Options section is amended by adding:

   During the Premium Payment Period, the Death Benefit under either Death Benefit Option shall not be less than:

   a. The Death Benefit Factor multiplied by the Accumulated Value on the date of the Insured's death; less

   b. the amount of any then due Monthly Deductions; less

   c. any debt to us on this policy.

   The Death Benefit Factor shall be equal to 1.40 if the Insured's Attained Age at the start of a policy year is 40 or less. The Factor shall be reduced by .01 for each year the Insured's Attained Age at the start of a policy year is greater than 40. However, the Factor shall never be less than 1.05.

2. The Payment of Premiums section is amended by adding:

   We will not accept any premium which would disqualify this policy as "Life Insurance" under Section 101. Any premiums not accepted shall be returned to the Owner.

   If premiums paid during a policy year exceed the maximum permitted under Section 101, we will return any such excess and any interest credited to such excess. Such return shall be made to the Owner within 60 days after the end of the policy year.

3. The Policy Changes section is amended by adding:

   The Face Amount may not be decreased if, as a result of such decrease, the policy would cease to qualify as "Life Insurance" under Section 101.

   A change of Death Benefit Option may be made only if, after such change, the policy would qualify as "Life Insurance" under Section 101.

Signed for NATIONAL LIFE INSURANCE COMPANY at Montpelier, Vermont as of the date of issue, by

*John L Stotler*    Secretary

Countersigned:

*Janek Nelson*    Registrar

National Life Insurance Co.
UL1-120-83              Home Office: Montpelier, Vermont 05602

LOAN INTEREST RATE ENDORSEMENT

Effective as of the date of issue of this endorsement, this policy is amended by deleting the Loan Interest provision now in the Policy Loans section of this policy and adding the following in its place:

**Loan Interest.** Any loan shall bear interest from the date the loan is made. The Loan Interest Rate may change from policy year to policy year.

On the date of issue of this endorsement, we will set a Loan Interest Rate. It shall apply to any new or existing debt to us on this policy. Such rate shall apply from when it is set until it is changed by us on a policy anniversary. The Loan Interest Rate when set by us shall not exceed the Maximum Rate allowed. The Maximum Rate allowed is the greater of:

1. the Published Monthly Average for the calendar month ending two months before the calendar month in which the policy anniversary occurs; and

2. the yearly Accumulated Value Interest Rate shown in the Data Section plus 1%.

The Published Monthly Average shall be the Moody's Corporate Bond Yield Average - Monthly Average Corporates, as published by Moody's Investors Service, Inc. or any successor to it. However, if at any time that Published Monthly Average is no longer published, a substantially similar average, established under the law of the state where this policy was delivered, shall be used.

On each policy anniversary after the date of issue of this endorsement, we may change the Loan Interest Rate on this policy. If on any policy anniversary the Maximum Rate then allowed is at least 1/2% per year less than the Loan Interest Rate in effect for this policy during the prior policy year, we will decrease the Loan Interest Rate for this policy. It will be decreased to a rate equal to or less than the Maximum Rate then allowed. If on any policy anniversary the Maximum Rate then allowed is at least 1/2% per year more than the Loan Interest Rate in effect on this policy during the prior policy year, we may increase such Loan Interest Rate. If increased, it shall be increased to a rate not greater than the Maximum Rate then allowed.

We will give to the Owner:

1. notice of the Loan Interest Rate in effect for this policy at the time a loan is made; and

2. reasonable advance notice of any increase in the Loan Interest Rate, if there is any debt to us on this policy.

In no event shall the Loan Interest Rate exceed the highest loan interest rate allowed by the law of the state in which this policy is delivered.

The date of issue of this endorsement is the policy Date of Issue unless a later date is shown below.

Signed for NATIONAL LIFE INSURANCE COMPANY at Montpelier, Vermont, as of the date of issue, by

*John L Stothr*                Secretary

Countersigned:

*Junik Nelson*                Registrar

National Life Insurance Co.
UL1-122-83                Home Office: Montpelier, Vermont 05602

Flexible Premium Adjustable Benefit Life Insurance. Adjustable death benefit is payable at death of Insured. Flexible premiums are payable to end of Premium Payment Period or until prior death of Insured. If Insured is living at end of Premium Payment Period, this policy becomes paid up life insurance.

The Owner is a member of National Life Insurance Company while this policy is in force. The annual meetings of the Company are held at its Home Office in Montpelier, Vermont, on the first Friday in February in each year at 9 o'clock A.M.